UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EILEEN C. LYONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-cv-00837-TWP-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Eileen C. Lyons ("Ms. Lyons") requests[1] judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.[2] For the reasons set forth below, the decision of the Commissioner is **REMANDED** for proceedings consistent with this Entry.

## I. BACKGROUND

**A.   Procedural History**

On April 15, 2009, Ms. Lyons protectively filed applications for DIB and SSI. Ms. Lyons alleged her disability began on August 9, 2008. Ms. Lyons's applications were both denied on September 23, 2009, and again after reconsideration on February 8, 2010. Ms. Lyons

---

[1] As an initial matter, the Court wishes to address the unedited state of the brief submitted by Ms. Lyons's attorney. Counsel is reminded to scrupulously proofread briefs before submitting them to the Court.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

timely filed a request for a hearing on April 21, 2010, and she appeared and testified at a hearing before Administrative Law Judge Albert J. Velasquez ("the ALJ") on August 5, 2010. Ms. Lyons was represented at this hearing by counsel. Additionally, Gail H. Franklin, an impartial vocational expert ("the VE"), appeared and testified at this hearing.

The ALJ found no disability and denied Ms. Lyons's requests for benefits on October 29, 2010. Ms. Lyons timely appealed to the Appeals Council, but the Appeals Council declined to review the case on March 20, 2012. This makes the ALJ's decision the final decision of the Commissioner for the purposes of judicial review. On May 23, 2012, Ms. Lyons requested the Appeals Council extend her time to file a civil action for judicial review. The Appeals Council granted this request on June 19, 2012, and extended Ms. Lyons's deadline for filing a civil action for thirty days after the date she received notice of the Appeals Council's decision. Ms. Lyons timely filed her Complaint in this Court on June 18, 2012.

**B.     Factual Background**

Ms. Lyons was forty-two years old at her alleged disability onset date in 2008. She has achieved a high school education, and she has past work experience as a certified nursing assistant, an optician, and a housekeeper. In her initial DIB, Ms. Lyons reported she stopped working due to seizures, depression and arthritis.

Ms. Lyons was diagnosed with seizure disorder, complex partial seizure versus complex partial seizure with secondary generalization, migraine headache, and primary seizures with associated migraine headaches, suggestive of complicated migraine headaches during her stay in the hospital between September 11 and September 15, 2008. Dr. Craig Hermann, M.D. ("Dr. Hermann"), noted that Ms. Lyons's seizures were controllable with Trileptal, but she indicated that at $100.00 per month, this medicine was too expensive for her. At this time, she smoked a

pack and a half of cigarettes a day. Dr. Hermann instead prescribed Tegretol, and Ms. Lyons acknowledged she could afford this medicine because it would only require a $4.00 co-pay at CVS Pharmacy.

Ms. Lyons returned to Dr. Hermann on April 21, 2010, after being admitted to the hospital, and indicated that while her seizures had stopped, she was in pain and had been unable to get out of bed for the past week. During her examination, Ms. Lyons screamed when she tried to stand up, and she refused to walk "secondary to pain." Dkt. 14-2 at 45. Dr. Hermann referred Ms. Lyons to Dr. Steven H. Neucks, M.D. ("Dr. Neucks").

Dr. Neucks examined Ms. Lyons later that day on April 21, 2010, and noted that she complained of pain, primarily on her left side, when walking and paresthesias. Dr. Neucks's first impressions were that Ms. Lyons had chronic pain syndrome and questionable acute pain on top of chronic pain. On April 24, 2010, Dr. Neucks noted that Ms. Lyons's psychiatric evaluation indicated she might have overlap between her pain and psychiatric issues. Dr. Neucks also reported that Ms. Lyons refused to schedule an appointment for psychiatric treatment. Dr. Neucks discharged Ms. Lyons and diagnosed her with fibromyalgia, depression, depression worsening pain, psychiatric consultation suggested somatization syndrome, and some weakness. Dr. Neucks noted his fibromyalgia diagnosis was supported by Ms. Lyons's subjective reports of pain from pressure on her tender points.

Ms. Lyons underwent home-based physical therapy from April 24 until June 24, 2010. Ms. Lyons missed some appointments and, while her therapy records indicate she made progress to reduce her pain, she was still noted to be home-bound. The physical therapy notes report that it would be very difficult for Ms. Lyons to leave her house on her own without assistance and that doing so would require a "considerable and taxing effort." The records also reflect that Ms.

Lyons would need assistive devices to leave her home. Furthermore, Ms. Lyons reported difficulty using stairs and needed a walker to move around.

On July 8, 2010, Ms. Lyons received the results from an electromyogram taken by Dr. Hermann. It indicated Ms. Lyons's left upper extremity was normal and contained no evidence of neuropathy or radiculopathy. Additional facts will be incorporated below as necessary.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and give, the

Case 1:12-cv-00837-TWP-DML Document 27 Filed 09/30/13 Page 5 of 13 PageID #: 985

ALJ must determine the claimant's Residual Functioning Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. §416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 562 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Lyons met the insured status requirements of the Act for DIB through December 31, 2013. At step one, the ALJ found that Ms. Lyons had not engaged in substantial gainful activity since August 9, 2008. The ALJ found Ms. Lyons received unemployment benefits and actively pursued employment after this date. Ms. Lyons ceased receiving unemployment benefits in mid-2010. At step two, the ALJ found that Ms. Lyons had the following severe impairments: seizure vs. pseudo seizure disorder, degenerative disc disorder, and depression vs. schizoaffective disorder. At step three, the ALJ found that Ms. Lyons does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ concluded that Ms. Lyons had the RFC to perform a reduced range of sedentary work, including lifting and carrying ten pounds occasionally and five pounds frequently; standing and walking for two out of eight hours and sitting for six out of eight hours, as long as the work does not include climbing of ropes, ladders, or scaffolds; and climbing ramps or stairs occasionally. The ALJ also concluded Ms. Lyons should not crawl, kneel, work at unprotected heights, work around dangerous moving machinery, operate a motor vehicle, or work around large flames or open bodies of water. The ALJ further concluded that any work engaged in by Ms. Lyons should accommodate the use of a cane from the work station, include only simple and repetitive tasks, and include only superficial interactions with the general public, co-workers, or supervisors. At step five, the ALJ found that considering Ms. Lyon's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, thus she is not disabled for the purposes of the Act from her alleged onset date through the date of the ALJ's decision.

## IV. DISCUSSION

Ms. Lyons appeals the Commissioner's decision on three claims of error by the ALJ: (1) the ALJ improperly discounted the opinions of one of Ms. Lyons's treating physicians; (2) the ALJ's RFC finding was inaccurate due to the previously mentioned purported credibility determination error; and (3) the ALJ did not show that a sufficient number of qualifying jobs existed in the national economy for Ms. Lyons to perform. Ms. Lyons also proffers additional evidence not in the medical record to obtain a new hearing.

### A. Treating Physician Rule

Ms. Lyons contends that the ALJ wrongfully discredited the medical opinions of Dr. Neucks by giving them "little weight" and not controlling weight. Dkt. 14-2 at 48. Although medical opinions by treating physicians are ordinarily entitled to controlling weight, the ALJ may discredit the treating physician's medical opinions after conducting a two-step inquiry: (1) whether controlling weight is appropriate and (2) what weight is appropriate if not controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). For the first inquiry, the ALJ must follow the Treating Physician Rule. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Controlling weight is appropriate under the Treating Physician Rule if the treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's medical opinion is entitled to "controlling weight" it must be adopted. SSR 96-2p (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). A treating physician's opinion is important because the treating physician has likely observed the claimant for the longest period of time and has a unique perspective to offer, but the importance placed on such evidence is tempered because it may also be unreliable if the

doctor is overly sympathetic to the claimant and finds a disability too quickly. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ addressed Dr. Neucks's opinions regarding Ms. Lyons's limitations due to fibromyalgia pain and only gave them "little weight" because they were primarily based on Ms. Lyons's subjective testimony and inconsistent with his treatment notes. Dr. Neucks's treatment notes report tender points at Ms. Lyons's posterior cervical, trapezius, and parascapular muscles; and tenderness in her left trochanteric bursa, Dkt. 14-10 at 18-20, and also an "excellent consultation from psych" that suggested a great deal of emotional overlap resulting in somatization. Dkt. 14-2 at 3. The ALJ did not explain how Dr. Neucks's treatment notes are inconsistent with Dr. Neucks's opinion that Ms. Lyons could only sit for about two hours out of eight, stand for less than two hours out of eight, carry less than ten pounds rarely, and never carry more than ten pounds. Dkt. 14-11 at 96. Dr. Neucks also opined that Ms. Lyons would need to miss more than four days of work per month. Dkt. 14-11 at 97. Further, although, Ms. Lyons's physical therapy records note that her pain improved over the course of home-based physical therapy treatment, especially in June 2010, s*ee* Dkt. 14-11 at 20, 16, 15, the physical therapist still categorized Ms. Lyons as having difficulty ambulating and was homebound. Instead of highlighting the inconsistencies the ALJ found, the ALJ dismissed Dr. Neucks's opinion without further explanation.

The Commissioner urges the Court to read the ALJ's decision as a whole, highlighting that the ALJ also discussed other medical evidence in the decision that included MRIs demonstrating minimal degenerative disc disease, an essentially normal physical examination by Dr. Herrman despite Ms. Lyons's complaints of severe pain, and a normal EMG. The

Commissioner argues it is enough that the ALJ discussed this evidence in the decision, because the Court is able to trace the ALJ's line of reasoning. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (stating that ALJ is "required to build a logical bridge from the evidence to her conclusions"). Under some circumstances, this reasoning might suffice, but given the ALJ's lack of any explanation, the Court does not find a logical bridge of substantial evidence supporting the ALJ's treatment of Dr. Neucks's opinion.

**B.     Additional Evidence**

Ms. Lyons has submitted new evidence containing additional records from Dr. Neucks that she argues supports remand. To support remand, the evidence must be new and material. Evidence is new if it was "not in existence or available at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Evidence is material if there is a "reasonable probability" that the evidence in question would have altered the ALJ's decision. *Id.* In particular, the records include a signed copy of the May 17, 2010 letter from Dr. Neucks that the ALJ considered as an unsigned record. Given that the ALJ did consider and reject the May 17, 2010 letter, the Court does not consider this document new and material evidence. Moreover, the additional medical records do not contain new and material evidence. The records are consistent with and cumulative of Dr. Neucks's treatment notes in the record, and many of the records existed prior to the date of the decision. Given the cumulative nature of the evidence, it is unlikely the ALJ would have reached a different decision.

However, good cause may warrant that the ALJ consider the new evidence on remand. Factors courts consider for good cause include:

> at what time the additional evidence was available; whether the record shows that the additional evidence derives from an expert retained solely for the purpose of establishing a disability; whether the claimant is uninformed in procedural matters; whether the claimant was represented by lay advocates in combination

9

> with a medical history that causes claimant to rely upon others to read and explain letters and notices; whether the Appeals Council found good cause pursuant to its regulations to grant claimant an extension of time to file his appeal.

*McGrath v. Astrue*, No. 11 C 2125, 2012 WL 1204391, at *3 (N.D. Ill. Apr. 10, 2012). Although Ms. Lyons's records were in existence at the time of the ALJ's decision and she was represented by counsel so was not uninformed, she did receive an extension of time to file her appeal and the doctor was not hired solely for the purpose of establishing a disability. Moreover, since the Court has found that the ALJ erred in his reasoning for discrediting Dr. Neucks's medical opinion, the existence of additional records from Dr. Neucks may aid in the ALJ's decision upon remand.

**C.     Claimant's Credibility and the ALJ's RFC Determination**

Ms. Lyons next challenges the RFC found by the ALJ, based upon the ALJ giving Ms. Lyons little credibility. An ALJ's assessment of the claimant's credibility is entitled to special deference and is not grounds for reversal and remand unless it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Social Security Ruling 96–7p provides seven factors that an ALJ may consider with respect to his credibility determination: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. In assessing the credibility of the claimant, the ALJ need not cite findings on every factor provided in 96–7p, but the ALJ must

articulate the reasons for his decision in such a way as to "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003) (citing SSR 96–7p).

Here, the ALJ did not seek any evidence at the hearing about Ms. Lyons's daily activities, details about her pain, or any functional limitations. Instead, the ALJ focused on Ms. Lyons's family situation, medicines and dosages, and unemployment benefits. While Ms. Lyons's counsel did ask her questions about her medical history and her pain, the record is nearly devoid of substantive discussion of the SSR 96-7p factors. The Court recognizes the ALJ is not required to address every factor, but here there was a failure to meaningfully address the factors as a whole.

Despite this, the ALJ found that Ms. Lyons's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible because "the level and/or frequency of treatment is inconsistent with the level of complaints, and/or the medical reports or records show that the claimant is not following the treatment as prescribed and there are no good reasons for this failure." Dkt. 14-2 at 47. Specifically, the ALJ noted that Ms. Lyons provided inconsistent statements to different medical providers, including the statements made to Dr. Joseph Croffe and Dr. Dennis Greene. The ALJ also specifically discussed Ms. Lyons's failure to receive psychiatric treatment and medications. Ms. Lyons contends that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (citations omitted). This principle is generally applied when an ALJ ignores evidence that a claimant cannot afford

treatment. In this case, there is evidence that Ms. Lyons could not afford her $100.00 per month prescription for anti-seizure medicine, so her doctor prescribed a $4.00 per month medicine that Ms. Lyons indicated she could afford. However, there is no indication that Ms. Lyons could not afford psychiatric treatment and she has not made this argument. The Court finds that while this issue, on its own, may not have supported a remand, the ALJ should consider the reasons why Ms. Lyons did not follow through with prescribed or recommended treatment when assessing her credibility.

As a whole, the ALJ did not sufficiently develop the record to make a credibility determination that is supported by substantial evidence. For this reason, the case should be remanded for the ALJ to fully develop the record in order make a credibility determination of Ms. Lyons.

**D.      Jobs in the National Economy**

When a claimant does not have a listed impairment and, at the ALJ's step four analysis, is found not to be able to perform her past relevant work, the ALJ must show that the claimant is able to perform some other work in the national economy. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The ALJ's hypothetical "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). Ms. Lyons contends that the hypothetical posed to the VE did not include all of her limitations, as required.

Ms. Lyons argues that the hypothetical did not adequately incorporate Ms. Lyons's deficiencies of concentration, persistence, and pace. An ALJ is not required to use the specific words "concentration, persistence, and pace" in all cases. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). A hypothetical question that omits the terms "concentration,

persistence, and pace" will be sufficient when the VE has independently reviewed plaintiff's medical records or heard evidence about a claimant's limitations, the ALJ used alternative language that specifically excluded those tasks a person with the claimant's limitations would be unable to perform, or the hypothetical question specifically mentioned the underlying condition interfering with "concentration, persistence, and pace." *Id*. These situations are not present in this case. Additionally, because the ALJ's credibility determination is not supported by substantial evidence in the record, the ALJ's RFC finding and resulting hypothetical to the VE may not have contained a full view of Ms. Lyons's limitations. Upon remand, the RFC and hypothetical should reflect the full range of limitations. As a final note, the Court finds that the VE's response to the hypothetical question posed by the ALJ produced a sufficient number of jobs to satisfy step five. This issue alone would not support a remand.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of the Social Security Administration is **REMANDED** for proceedings consistent with this Entry.

**SO ORDERED.**

Date: 09/30/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Annette Lee Rutkowski
LAW OFFICES OF ANNETTE RUTKOWSKI
anetrutkowski@gmail.com

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov